IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL CHINCHAR, | ) | CASE NO. 1:12-CV-1858 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Michael Chinchar's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the decision of the Commissioner.

## I. PROCEDURAL HISTORY

In January 2009, Plaintiff Michael Chinchar ("Plaintiff" or "Chinchar") applied for Supplemental Security Income benefits. (Tr. 104). Plaintiff alleged he became disabled on June 1, 2004, due to peripheral neuropathy and back pain. (Tr. 104, 129). The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. 67–69, 73–75). Plaintiff filed a written request for a hearing before an administrative law judge on October 14, 2009. (Tr. 78–80). The administration granted Plaintiff's request and scheduled a hearing. (Tr. 83).

1

On January 20, 2011, Administrative Law Judge Kevin Fallis (the "ALJ") convened a hearing to evaluate Plaintiff's application. (Tr. 24–64).  Plaintiff, represented by counsel, testified before the ALJ during the proceeding. (*Id*.).  Debra Lee, a vocational expert ("the VE"), was also present at the hearing and testified.  (*Id*.).  On March 4, 2011, the ALJ issued his decision in which after applying the five-step sequential analysis,[1] he concluded that Plaintiff was not disabled. (Tr. 9–11).

Chinchar then sought review of the ALJ's decision from the Appeals Council. (Tr. 7–8). However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).  Plaintiff now seeks judicial review of the Commissioner's decision.  Review is proper pursuant to 42 U.S.C. § 1383(c)(3).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. §§  404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

> (1) If a claimant is doing substantial gainful activity—i.e., working for profit—she is not disabled.
>
> (2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> (4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. PERSONAL BACKGROUND INFORMATION  
## & PERTINENT MEDICAL HISTORY

Chinchar was born on September 25, 1964 and was 44 years old on the date he filed his application. (Tr. 65, 104). Accordingly, Plaintiff was at all times considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 416.963. Plaintiff completed high school (Tr. 32) and has past work experience as a landscape laborer and a house painter. (Tr. 55).

Plaintiff suffered a work-related back injury in January 2004 while landscaping. (Tr. 35). Thereafter, Plaintiff sought treatment for his back, and on May 21, 2008, he underwent a neuromuscular assessment with Dr. Tina Waters to address complaints of numbness. (Tr. 246). Plaintiff explained to Dr. Waters that numbness in his feet began after he was prescribed orthotics to alleviate back pain. (*Id.*). Plaintiff also noted numbness in his legs, which standing relieved. (*Id.*). The neurological examination proved unremarkable, with Plaintiff exhibiting full strength in all muscle groups, normal senses in all four extremities, and normal reflexes. (Tr. 247–48). However, Dr. Waters opined that Plaintiff may have neuropathy (Tr. 248), and a June 11, 2008 skin biopsy showed mild small fiber sensory neuropathy. (Tr. 262).

On May 27, 2008, Plaintiff presented to Dr. Daniel Mazanec for a consultative examination. (Tr. 254). Chinchar reported constant back pain, bilateral foot pain, and numbness in his thighs caused by sitting. (*Id.*). Upon examination, Dr. Mazanec found Plaintiff's reflexes and strength in his lower extremities were normal and straight leg raises were negative. (Tr. 255). The doctor concluded that Plaintiff's impressions of severe disability and pain were "out of proportion to previous imaging findings and [the] exam today." (*Id.*).

Chinchar returned to Dr. Waters in June 2008 for a follow-up regarding his small fiber neuropathy. (Tr. 264). He expressed foot numbness and pain and complained that he can only wear shoes for fifteen minutes at a time. (*Id.*). Notwithstanding these complaints, the

3

examination revealed intact senses and reflexes, full strength, normal muscle tone and bulk, and a normal gait. (*Id.*).

In September 2008, Plaintiff received treatment from rheumatologist Dr. Mariam Khan in response to back pain. (Tr. 284). At the time of the consultation, Plaintiff reported doing physical therapy at home and alternating between sitting and standing every fifteen minutes to relieve back pain. (*Id.*). Plaintiff also complained of numbness in his feet. (*Id.*). During a physical examination Plaintiff displayed symmetrical reflexes, a normal gait, normal sensation and touch, and normal muscle strength. (Tr. 286). Dr. Khan concluded that Plaintiff's pain was out of proportion to his physical examination. (Tr. 287).

On March 9, 2009, Plaintiff sought treatment with neurologist Dr. Rebecca Kuenzier. (Tr. 394). Plaintiff said he experienced tingling in his fingers that arose approximately one month before the appointment. (*Id.*). Dr. Kuenzier reported that Plaintiff's gait was antalgic but intact. (*Id.*). Though Dr. Kuenzier noted foot hypoesthesia, or decreased sensitivity, she did not highlight other sensory abnormalities in Chinchar's feet or hands. (*Id.*). The doctor opined that despite the decreased sensitivity in his feet, Plaintiff also had "nonphysiologic features" underlying his complaints. (*Id.*).

Toward the end of 2009, Plaintiff underwent pain management treatment with Dr. William Welches. (Tr. 457). During his March 2010 examination, Plaintiff reported that standing and walking helped to alleviate his back pain (Tr. 452–53). Plaintiff also noted numbness and tingling in his hands. (*Id.*). In June 2010, Plaintiff said he had experienced improvement with exercise and medication. (Tr. 448). He reported no longer using a medicated back patch, which he previously wore every day. (Tr. 449). During his October 2010 session, Plaintiff stated his overall pain was better, despite experiencing numbness and tingling in his

4

feet. (Tr. 434).

On January 22, 2011, Plaintiff underwent a physical capacity evaluation performed by Dr. Christine Ontko. (Tr. 462). Dr. Ontko observed severe muscle weakness in Plaintiff's upper and lower extremities. (*Id.*). She stated that Plaintiff had poor sitting and standing tolerance of fifteen minutes each, poor sensation, decreased coordination, poor balance, and impaired grip strength. (*Id.*). Finally, Dr. Ontko noted that Plaintiff presented to the examination without the use of an assistive device, but found that Chinchar's gait was severely antalgic, slow, and labored, which she said was "secondary to his being unable to feel his feet." (Tr. 463).

### III.   THE ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 26, 2008, the application date.

2. The claimant has the following severe impairments: facet arthritis of the L5-S1 region of his lumbosacral spine, degenerative changes of the claimant's right foot, fibromyalgia, and peripheral neuropathy.

3. The claimant does not have an impairment or combination of impairments that meets one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant is limited to lifting less than 10 pounds occasionally; he can stand and walk for a total of 2 hours of an 8-hour workday, respectively, with normal breaks; he can sit for a total of 6 hours of an 8-hour workday with normal breaks; he can never climb ladders, ropes, and scaffolds and occasionally climb ramps and stairs; he can never balance; he can occasionally stoop, crouch, kneel, and crawl; has a sit stand option every 15 minutes.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on September 25, 1964 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

5

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 26, 2008, the date the application was filed.
(Tr. 14-19) (internal citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

After reviewing Plaintiff's file, the ALJ concluded that Chinchar was not disabled (Tr. 12), but had numerous severe impairments, including facet arthritis of his lumbosacral spine, degenerative changes in his right foot, fibromyalgia, and peripheral neuropathy. (Tr. 14). Plaintiff challenges the ALJ's determination of non-disability, claiming that the ALJ failed to properly assess his credibility, residual functional capacity, and step-five finding of available work. None of these objections warrants reversal of the ALJ's decision or remand.

### A. Disabling Pain and Symptoms

Plaintiff argues that the ALJ erred by failing to address his complaints of foot, finger, and hand numbness under the appropriate credibility standard. The Social Security regulations recognize that a claimant's disability can be caused by the symptoms resulting from a claimant's impairments, rather than from the impairment itself. 20 C.F.R. § 416.929. However, statements made by the claimant regarding his pain or symptoms will not alone establish an entitlement to

benefits. 20 C.F.R. § 416.929(a). Instead, the Sixth Circuit requires a two-pronged test to evaluate a claimant's subjective complaints of disabling pain. 20 C.F.R. § 416.929(c); *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994). First, the ALJ must determine whether there is objective medical evidence of an underlying medical condition that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(c). Second, if the ALJ finds that an underlying impairment exists, he must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.* In evaluating the claimant's pain, the ALJ should consider the following factors: the claimant's daily activities and functional restrictions; the nature, location, duration, frequency, and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3.

Because the ALJ has the opportunity to observe the demeanor and disposition of witnesses during the hearing process, the ALJ is best equipped to evaluate the credibility of witnesses. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247–48 (6th Cir. 2007). As a result, the court is to accord great deference to the ALJ's credibility determinations. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). It is appropriate for the ALJ to discount credibility where the ALJ finds discrepancies between the medical reports, claimant's testimony, and other evidence of record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When an ALJ discredits a claimant's credibility, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently

8

specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

In the present case, the ALJ expressly noted Plaintiff's allegations of pain and symptoms—including numbness and sensitivity—and after a careful examination of the evidence, found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 16–17). Although Plaintiff contends that the ALJ was required to address all of the factors listed in Social Security Ruling 96-7p, Plaintiff does not cite any legal authority to support this contention. The text of the Ruling provides that the ALJ must only "consider" the various factors when assessing a claimant's credibility. An ALJ is under no obligation to mention every piece of evidence presented to him to show that such evidence was considered. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 507–07 (6th Cir. 2006) (per curiam) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). A review of the ALJ's opinion supports the conclusion that he did take into account the factors set out Social Security Ruling 96-7p. (*See* Tr. 14–16). For example, the ALJ noted Plaintiff's reports that standing relieves his leg numbness (Tr. 15, 246) and attending pain management therapy improved the overall level of his pain. (Tr. 17, 435).

Furthermore, the Court finds that the ALJ provided adequate reasons for finding Plaintiff's allegations of numbness less than fully credible. Specifically, the ALJ noted that Plaintiff's treatment history did not support his alleged limitations arising out of his neuropathy. The ALJ relied on Dr. Mazanec's May 2008 functional examination, which showed Chinchar's lower extremity reflexes and strength were normal and his bilateral straight leg raises were negative, even though the doctor noted potential neuropathy and Chinchar complained of foot

9

pain and leg numbness. (Tr. 255). In addition, the ALJ noted Dr. Mazanec's observation of symptom magnification, as the doctor stated Chinchar's pain was "out of proportion to previous image findings and exam today." (*Id.*). The ALJ also referenced Dr. Khan's notation of symptom magnification in September 2008. (Tr. 287). In addition, the ALJ pointed to Chinchar's May 2008 neuropathy treatment with Dr. Waters. (Tr. 246). Though the doctor recorded Plaintiff's complaints of numbness on the bottom of his feet and in his legs, the evaluation showed intact senses in all four extremities and Plaintiff reported that standing alleviated the numbness in his legs. (Tr. 246–47). Dr. Waters further found that Plaintiff had full strength and normal tone and bulk in all muscle groups and displayed a normal gait. (Tr. 247).

To support his allegations of disabling foot and hand numbness, Plaintiff points to his January 2011 physical capacity evaluation with Dr. Ontko. Dr. Ontko found that Plaintiff had poor sensation, decreased coordination, poor balance, impaired grip strength, and a severely impaired gait. (Tr. 462–464). The doctor also found that Chinchar had severe weakness in his upper and lower extremities. (Tr. 462). The ALJ gave little weight to Dr. Ontko's opinion, stating that it was inconsistent with Chinchar's medical evidence, which showed his symptoms and limitations were not of the same severity as she reported.

The ALJ's evaluation of Dr. Ontko's opinion is supported by substantial evidence. Dr. Ontko examined Chinchar on only one occasion, and more importantly, the ALJ referred to treatment records that conflicted with Dr. Ontko's report. (Tr. 17). For example, the ALJ noted Chinchar's treatment with Dr. Khan in September 2008. (Tr. 17, 284). Even though Plaintiff complained of numbness in both feet, the examination revealed normal reflexes and sensation, normal muscle strength, no limitation of motion in his joints, and a normal gait. (Tr. 284, 286). In October 2010, after a series of pain management treatments with Dr. Welches, Plaintiff

10

reported that his overall pain was under better control since he began the program, despite numbness and tingling in his feet. (Tr. 434–35).  Furthermore, over the course of treatment with Dr. Welches, which did not long precede Dr. Ontko's examination, Plaintiff affirmed that conservative treatment like exercise and medication improved his back pain and ability to lift, in contrast to the significant weakness noted by Dr. Ontko. (*See* Tr. 434–61).  These inconsistences were a valid basis for the ALJ to discount Dr. Ontko's opinion.

Plaintiff also cites a number of doctors' records purportedly documenting his complaints of hand and finger numbness and supporting non-exertional limitations.  Yet, of those records cited by Plaintiff, only Dr. Ontko's report, Dr. Welches's March 2010 report, [2] and Dr. Kuenzier's 2009 and 2011 reports document this complaint.  The Court cannot consider Dr. Kuenzier's 2011 report because it was submitted to the Appeals Council after the ALJ rendered his decision. *See Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir. 1993).  Furthermore, despite Plaintiff's complaints of hand or finger numbness to Dr. Welches and Dr. Kuenzier, neither doctor prescribed any corresponding limitations. (Tr. 454, 394).  Aside from Dr. Ontko's report, Plaintiff has not pointed to medical evidence showing that numbness in his hands rendered him disabled.

Plaintiff also maintains that the ALJ erred by failing to credit his testimony that foot numbness prevents him from driving and requires him to take off his shoes every fifteen minutes.  Although the ALJ did not expressly address these alleged limitations, the Court sees no indication that the ALJ did not take all of the evidence into account when reviewing Chinchar's claim.  Moreover, Plaintiff has not identified any healthcare provider who suggested he cannot drive or must frequently take off his shoes.  Thus, substantial evidence supports the ALJ's

---

[2] Plaintiff incorrectly cites to Dr. Welches's November 2010 report, which does not contain a complaint of hand numbness. (Plaintiff's Brief, at 13).  However, Dr. Welches's March 2010 report does contain this complaint.

evaluation of Plaintiff's credibility.

### B. Residual Functional Capacity

After step three of the sequential evaluation process, the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC "is the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis" despite his or her medically determinable impairments, including any related symptoms. SSR 96-9p. "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)).

In the present case, Plaintiff argues that the ALJ's RFC finding was erroneous because the ALJ failed to include a complete assessment of Plaintiff's neuropathy. Plaintiff contends that the ALJ failed to consider the limitations caused by the numbness in his feet and his hands, which he asserts were supported by complaints to his physicians and Dr. Ontko's functional examination. Most specifically, Plaintiff argues that the RFC should have contained a limitation that Plaintiff remove his shoes every fifteen minutes to alleviate numbness.

Plaintiff's objections are not well-taken. When determining the RFC, the ALJ considered both Plaintiff's opinion evidence and all of the medical opinion evidence in the record. (Tr. 16). To the extent that the ALJ found limitations caused by Plaintiff's neuropathy were supported by the record, he incorporated those limitations into the RFC, including a sit-stand option every fifteen minutes, a no balancing requirement, and a requirement of only occasional use of ramps and stairs. Though Dr. Ontko's opinion indicated that Plaintiff was limited in the use of his extremities, the ALJ assigned the opinion little weight because it was inconsistent with Plaintiff's prior treatment records. As the Court previously noted, Plaintiff's medical history supports the ALJ's assessment. In regard to removing his shoes, Plaintiff has failed to provide evidence

showing that any physician prescribed this measure. As such, the ALJ was not required to incorporate the limitation into the RFC.

Furthermore, while evaluating the RFC, the ALJ considered Plaintiff's series of pain management treatments with Dr. Welches in 2010. (Tr. 17). The ALJ noted that over the course of his pain management therapy, Plaintiff reported improvement in his back and overall pain. (Tr. 435, 449). The ALJ also referenced Plaintiff's admissions that he was capable of walking and exercise, both of which alleviated some of his back pain. (Tr. 435, 448). Dr. Welches's reports show that conservative treatment helped to manage Chinchar's pain, supporting the ALJ's determination that Chinchar could perform the modified range of sedentary work set forth in the RFC. Accordingly, the ALJ's RFC finding was not in error.

### C. Step-Five Finding

Chinchar maintains that the ALJ's step-five finding in the sequential analysis is flawed because the ALJ allegedly relied on portions of VE testimony that supported his decision while disregarding other VE testimony that would lead to a finding of disability. Specifically, Plaintiff asserts that the ALJ erred by relying on a hypothetical that did not account for his need to walk during his sit-stand option and by disregarding VE testimony incorporating limitations supported by Dr. Ontko's examination. These arguments are not well-taken.

The Sixth Circuit recognizes that "[i]f the [ALJ's] hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir. 1987)). In addition, it is well settled that when posing a hypothetical question to a VE, the ALJ is only required to incorporate those limitations he finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In the present case, the ALJ found that jobs as a cashier and order clerk would be available for Chinchar to perform. (Tr. 18).  This conclusion was supported by VE testimony addressing a hypothetical question that included the limitations in the ALJ's ultimate RFC, which the record supported. (Tr. 59).  Considering that Plaintiff failed to present any medical evidence showing he must walk every fifteen minutes to alleviate the numbness in his feet, the ALJ was not required to accommodate this unsubstantiated claim in the hypothetical upon which he relied.  The ALJ also provided sufficient reasons for discrediting Dr. Ontko's opinion, and as a result, was not bound by VE testimony incorporating those findings.  Accordingly, the VE's answers to the hypotheticals considering these limitations were not controlling.

## VII.   DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  September 18, 2013.